IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REGINALD CARTER, #370098        *

Petitioner,        *

v        *        Civil Action No. GLR-16-254

JOHN WOLFE, WARDEN        *

Respondent.        *

*****

## MEMORANDUM OPINION

On January 28, 2016, Petitioner Reginald Carter filed the instant original and amended 28 U.S.C. § 2254 habeas corpus petition attacking his 2011 convictions and sentences on robbery offenses entered in the Circuit Court for Baltimore County, Maryland. (ECF Nos. 1, 3). Respondents filed an Answer.[1] (ECF No. 7). Petitioner has not filed a Reply. The Petition is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will deny and dismiss the Petition with prejudice.

## I.        BACKGROUND

### A.        State Court Proceedings

Petitioner Carter was charged with several offenses, including armed robbery of a Susquehanna Bank in Randallstown, Maryland. (ECF Nos. 7-1, 7-8).[2] Counsel filed a motion to suppress evidence seized from an automobile Carter was a passenger in at the time of his arrest. Following a pre-trial hearing on May 3, 2011, the court denied the suppression motion. (ECF

---

[1] Respondents simultaneously filed a motion for extension of time with their Answer, seeking a one-day extension. (ECF No. 8). The Motion shall be granted nunc pro tunc.

[2] Unless otherwise noted, the Court shall cite to the pagination found in the electronic docketing system.

No. 7-8).  In May of 2011, Carter was tried before a jury in the Circuit Court for Baltimore County, Maryland with Judge Judith Ensor, presiding.  The key element of the case was the identification of the robber.  After listening to two days of testimony, the jury convicted Carter of two counts of robbery.  (ECF Nos. 7-3, 7-4).  On July 13, 2011, the court sentenced Carter to a twenty-five year term, without the possibility of parole, on one count of robbery and a fifteen year sentence on the remaining robbery count, or a cumulative forty-year term.  (ECF No. 7-5 at 45).

The witnesses at trial, including several employees from the Susquehanna Bank in Randallstown and a security executive, furnished testimony regarding the physical description and attire of the robber, the events that occurred during the commission of the crime on June 7, 2010, the distribution of money and dye packs, the activation of those dye packs outside the bank, and how those dye packs are utilized and activated.  (ECF No. 7-2).  In addition, video clips taken from the robbery inside the bank entered into evidence and there was testimony from the Maryland State Troopers and Baltimore County Police Department detective who arrested Carter on June 16, 2010, served as the case manager in the criminal matter, and who was investigating the June 7, 2010 bank robbery at the Susquehanna bank in Randallstown.  Also, a forensic chemist with the Federal Bureau of Investigation testified about the examination and tests for bank security device chemicals (1MAAQ and CS tear gas) on Carter's green cargo pants (seam and waistband) worn when Carter was arrested.  (ECF No. 7-3).  At the conclusion of the State's case, the defense made a motion for acquittal, which Judge Ensor denied.  The defense did not put any witnesses on the stand, rested, and renewed its motion for acquittal, which the court again denied.  (ECF No. 7-4)

In a counseled direct appeal, Carter raised one claim, arguing that Judge Ensor erroneously denied his motion to suppress evidence from the car in which Carter was a passenger.  (ECF No. 7-6).  After briefing by the parties, the Court of Special Appeals of Maryland denied Carter's appeal in an unreported opinion of August 8, 2012.  (ECF No. 7-8).  Carter filed a petition for writ of certiorari and supplement, which was denied by the Court of Appeals of Maryland on November 19, 2012.  (ECF No. 7-9).

Carter instituted state post-conviction proceedings on October 9, 2013, raising claims of ineffective assistance of trial counsel for the failure to: (A) move to suppress statements Carter made to State Troopers while police were looking for his green cargo pants, (B) object to inadmissible hearsay testimony, (C) object or request a mistrial when the prosecutor commented on Carter's post-arrest, post-Miranda silence when in an interview room at a Maryland State Police Barrack, (D) object to testimony offered as "lay opinion" and to take exception to the State's evasion of the notice and disclosure of expert testimony requirements, (E) object to improper testimony given by the prosecutor regarding the activation of red dye packs, (F) tender a jury instruction regarding the statement given by Carter, and (G) admit a police report into evidence.  Carter further claimed that: (H) the cumulative effect of counsel's errors rendered Carter's trial unreliable and (I) counsel was ineffective because he failed to object to the State's violation of Maryland Rule 4-263.  (ECF No. 7-10).

A hearing was held on Carter's post-conviction petition on October 8, 2014.  Baltimore County Circuit Court Judge Kathleen Gallogly Cox denied post-conviction relief on November 24, 2014.  (ECF No. 7-11).  Carter filed an application for leave to appeal the decision of the post-conviction court, restating the issues ruled upon in the post-conviction proceedings.  (ECF

No. 7-12).  The Court of Special Appeals summarily denied the application on January 6, 2016. (ECF No. 7-13).

**B.**     **§ 2254 Habeas Corpus Petition**

In the instant Petition, Carter asserts that he is being detained illegally in state custody. In short, Carter has reasserted the Sixth Amendment claims he raised in his post-conviction petition, arguing that trial counsel Dills was ineffective for the failure to: (1) move to suppress statements he made to state troopers while they were looking for his green cargo pants, (2) object to inadmissible testimony, (3) object or request a mistrial when the prosecutor commented on Carter's post-arrest, post-Miranda silence, (4) object to testimony offered as "lay opinion" and to take exception to the State's evasion of the notice and disclosure of expert testimony requirements, (5) object to improper testimony by the prosecutor, (6) request instruction regarding Carter's statements, (7) admit a police report into evidence, and (8) that the cumulative effect of counsel's errors rendered Carter's trial unreliable.  (ECF Nos. 1, 3).

## II.     DISCUSSION

**A.**     **Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a highly deferential standard for evaluating state-court rulings.  Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011) (internal quotation marks and citations omitted); see also White v Woodall, 134 S.Ct 1697, 1702 (2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)) (holding that the petitioner must show the state court ruling was "so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 785 (internal quotation marks omitted).

Further, under §2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. "[A]

federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. at 379.

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). When assessing counsel's performance under the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. The second prong requires the Court to consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

As the Supreme Court held in Strickland, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent

stated by [former] 28 U.S.C. § 2254(d)[now § 2254(e)(1)]." Id. at 698.  Rather, "although state

court findings of fact made in the course of deciding an ineffectiveness claim are subject to the

deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of

the ineffectiveness inquiry are mixed questions of law and fact." Id.  Federal habeas relief may

not be granted on a claim of ineffective assistance of counsel where the state court denied the

claim based on a reasonable application of the Strickland standard to the facts presented in the

state court proceeding.

**B.**    **Analysis**

    **1.**    **Statements to Police**

Carter's first Sixth Amendment claim alleges that trial counsel James Dills failed to

suppress statements he made while police were looking for his green cargo pants.  The post-

conviction court rejected the claim, stating that:

> [T]he location of the green cargo pants worn by the Petitioner at the time of his arrest became an issue and the Petitioner was questioned by officers regarding the location of the pants. Both Trooper Green and Corporal Liddick testified as to the nature of this questioning.
>
> The pertinent testimony of Trooper Green is as follows . . . [:]
>
> [TROOPER:]    [Corporal Liddick] returns, *he says that Mr. Carter had told him that he gave them to a female detective*.
>
> STATE:    And, and what did you do as a result of that?
>
> TROOPER:    I, again, went with Trooper Liddick that time back to his cell, asked Mr. Carter where his pants are, he said he gave them to another, another detective. So we knew that no, no other people would have (inaudible) his pants.
>
> The pertinent testimony of Corporal Liddick is as follows:
>
> STATE:    And then what did you do?

CORPORAL: *I went back into the cell, asked the Defendant where the green pants were that he had on. He stated to me that he had provided them to a female trooper, he had given them to a female . . .* I went back into the cell, I asked Mr. Carter, again, where the green pants were. He made no comment. There's a water fountain in the cell with a metal shroud which is the only area they could have been hidden. I reached up inside, back behind the metal shroud, and there was the rolled up green pants stuck up underneath the water fountain.

STATE:   And when, when you found the items, what did you do?

CORPORAL: I made a comment to Mr. Carter that you need to hide them better than that and he just looked at me and smiled . . .

Upon review of the trial transcript, it is clear that the questions asked of the Petitioner regarding the location of his pants were not reasonably likely to elicit an incriminating response.  Rather, the questions were designed to facilitate the seizure and packaging of the Petitioner's clothing, and were therefore related to the booking process. As such, the questions were not asked in violation of *Miranda* and the responses made by the Petitioner were not subject to a Motion to Suppress . . .

The Petitioner has provided absolutely no evidence to suggest that he was coerced by the troopers to respond to their questions regarding the location of the pants. Quite to the contrary, the trial transcript makes it clear that the Petitioner's statements were calculated to deceive the troopers and to obstruct his efforts to locate the missing pants. Furthermore, the Petitioner's statements indicating that he had given the pants to another detective were not incriminating in nature, and therefore do not fall under the purview of involuntariness.

(ECF No. 7-11 at 12–16).

For a claim involving a motion to suppress, the petitioner is required to show that, but for counsel's unprofessional errors, "the motion . . . likely would have been granted, and . . . [there is] a reasonable probability that granting the motion would have affected the outcome of his trial." Grueninger v. Dir., Virginia Dept. of Corrections, 813 F.3d 517, 525 (4th Cir. 2016) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Tice v. Johnson, 647 F.3d 87, 104, 107-08 (4th Cir. 2011)).

The state court's denial of Carter's ineffective assistance of counsel claim was based on a reasonable application of the <u>Strickland</u> standard to the facts of Carter's case because Carter fails to establish that his argument is meritorious.   There was no articulable basis for defense attorney James Dills to move to suppress those statements on the asserted basis.   Indeed, in all likelihood, if Dills had filed the motion to suppress, the motion would have failed.   Thus, because such contentions fail to show deficiency of counsel, they cannot establish prejudice under the <u>Strickland</u> test.   Accordingly, the Court concludes that Carter states no basis for relief under 28 U.S.C. § 2254(d) for Dills' failure to suppress statements Carter made to police.

**2.      Green's Testimony to Liddick**

Carter's second ineffective assistance claim argues that counsel Dills erred in failing to object to inadmissible hearsay testimony.   Presumably, he is reasserting the claim raised on post-conviction review.   Judge Cox concluded that Maryland State Trooper Green's testimony describing Carter's statement to Corporal Liddick about the location of the missing cargo pants was not hearsay because it was not offered to prove the truth of the matter asserted.   Judge Cox noted the following:

> Here, the testimony of Trooper Green that relates the statement made by the Petitioner did, in fact, give his pants to a female detective is not offered to prove that the Petitioner did, in fact, give his pants to a female detective.   Rather, the testimony is offered to introduce and frame the issue of the search for the green pants by the troopers.   Therefore, the statement was not offered to prove the truth of the matter asserted and is not inadmissible hearsay.   Because the testimony in question was not hearsay, it follows that the Petitioner's trial counsel was not ineffective for failing to object to the testimony.   Therefore, no post-conviction relief is warranted on this ground.

(ECF No. 7-11 at 18).

Upon review of the exhibits, the court concludes that the post-conviction court's determination regarding Green's testimony to Liddick constitutes a reasonable application of Strickland and will not be overturned.  See 28 U.S.C. § 2254(d).

**3.      Post-Arrest Silence**

Carter's third ineffective assistance of counsel claim concerns Attorney Dills' alleged failure to object or move for a mistrial when Assistant State's Attorney Bickel made a comment regarding Carter's decision to remain silent when questioned by police.  To the extent Carter is reasserting his post-conviction claim, however, the Court finds no basis for relief.  Judge Cox reviewed this claim and noted that Prosecutor Bickels' opening statement comment was as follows:

> STATE:      This case, dye pack residue, pants that man was wearing, but that's not it because when he's arrested on June 16, he's taken to Westminister Barrack and *he's put in an interview room.  He's asked questions but no questions are answered.*  He's transferred to a holding cell.  The other subject he's arrested with, Aubrey Scott, is in an adjacent holding cell.

(ECF No. 7-11 at 19).

Judge Cox concluded that the isolated reference to Carter's silence was insufficient to warrant a mistrial because there was no evidence to suggest that the statement was made in bad faith or that Carter was substantially prejudiced by the prosecutor's statement.  Judge Cox reasoned that opening statements are not evidence and have no binding force or effect.  She further explained that Carter's decision to remain silent came in response to basic introductory questions that are generally regarded as part of the booking process, not part of an interrogation, and the decision whether to object to this type of isolated reference, particularly during an opening statement, is a tactical decision best left to the discretion of trial counsel.  The post-conviction court's ruling as to this issue survives scrutiny under Strickland.  The Court finds no

basis to overturn Judge Cox's decision under 28 U.S.C. § 2254(d) for Bickel's reference to Carter's post-arrest silence during his opening statement.

### 4. Lay Opinion Testimony

In his fourth Sixth Amendment claim, Carter argues that counsel erred in failing to object to the lay opinion testimony of a witness. Insofar as he is reiterating the claim he raised on post-conviction review, he argues that counsel failed to object to the "lay opinion" of Michael Epple, an employee of the business that sold the dye pack involved in the June 7, 2010 robbery. Judge Cox held that Epple's testimony describing the design, contents, and operation of the type of dye pack that was utilized based upon his understanding of the dye packs, rather than the subject matter of the bank robbery, did not require him to be designated as an expert witness. (ECF No. 7-11 at 20–21). Judge Cox therefore held that Carter's trial counsel was not ineffective for failing to object to Epple's testimony. (Id.).

The Court will not overturn Judge Cox's decision because it was not an unreasonable application of Strickland to the facts of the case. There is no showing of deficient performance on the part of James Dills or prejudice to Carter. Carter does not demonstrate a basis for relief under § 2254(d) for Epple's testimony.

### 5. Testimony by Bickel

In his fifth claim, Carter argues that defense attorney Dills was ineffective for his failure to object to improper testimony by Assistant State's Attorney Bickel during his direct examination of Michael Epple. Judge Cox found no merit to the claim, concluding that "Bickel's testimony was intended to simply highlight the testimony of Mr. Epple while the jurors viewed the dye pack. The statement made by Mr. Bickel was not relevant to any controversial issue at trial and therefore Petitioner suffered no prejudice as a result of his trial counsel's failure

to object to Mr. Bickel's statement. Therefore, no post-conviction relief is warranted on this ground." (ECF No. 7-11 at 21–22).

The Court finds no basis to afford Carter relief as to this claim.  He has failed to demonstrate that the failure to object to Bickle's comments constituted deficient performance or otherwise prejudiced his case.

### 6.      Jury Instruction

In his sixth ineffective assistance of counsel claim, Carter alleges that Dills was ineffective for failing to request a jury instruction regarding statements he made to Corporal Liddick in response to questions about the location of the missing green cargo pants.  This claim was raised on post-conviction review and rejected by Judge Cox, who concluded that the trial court made no error by admitting Carter's statements regarding the location of his missing cargo pants because the statements were not incriminating in nature and were not made in response to interrogation.  She further held that Carter had failed to proffer an appropriate jury instruction that his trial counsel should have requested at trial.  (ECF No. 7-11 at 22).  Because Carter has failed to show deficient performance or prejudice to his case, the Court will not award relief under § 2254(d) for Dills' failure to request a jury instruction.

### 7.      Police Report

In his seventh Sixth Amendment claim, Carter argues that defense counsel was ineffective for failing to admit the police report that identified Aubrey Scott, rather than Carter, as the individual wearing the green cargo pants.

Judge Cox examined and denied this claim on post-conviction review, finding that:

> At trial and at the Post Conviction hearing, Trooper Green admitted that the police report contained a typographical error. However, Trooper Green also testified that the same report identified the Petitioner as the individual wearing the green cargo pants in other areas of the report.

. . . Here, defense counsel reached a sound tactical decision to admit the evidence of the inconsistency in the report through the testimony of the officer who wrote the report. Because the same report identified the Petitioner as wearing the green cargo pant in other areas, the admission of the report itself may have been damaging to the Petitioner's case. Therefore it was a reasonable tactic to admit the inconsistency through testimony rather than to admit the report itself into evidence.

In addition, this is not a case where the police report was the only evidence offered to prove that the Petitioner was the individual wearing the green cargo pants at the time of his arrest. Trooper Stanley, Trooper Green, and Detective Francis all testified that it was the Petitioner, and not Aubrey Scott, who wore the green cargo pants at the time of arrest and when the two were being held at the Westminster Barrack. Therefore, the Petitioner has not demonstrated that his case was prejudiced by Mr. Dill's decision not to admit the police report into evidence.

(ECF No. 7-11 at 23).

The Court will not overturn Judge Cox's decision.  As noted by Judge Cox, Green testified that there was a typographical error in the police report which identified Aubrey Scott as wearing the green cargo pants.  Yet, Carter was identified as wearing the green cargo pants in other passages of the police report.  Further, Maryland State Police Troopers and a Baltimore County detective testified during trial that it was Carter who was wearing the green cargo pants when he and Scott were being held at the State Police Barrack at the time of his arrest.  Thus, the admission of the report itself may have been damaging to Carter's case.  Carter has failed to demonstrate that Dills' representation fell below an objective standard of reasonableness or that but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, the Court concludes Carter has failed to prove a basis for relief under § 2254(d) for Dills' failure to admit the police report.

## 8.    Cumulative Effect of Errors

In his final Sixth Amendment claim, Carter asserts that trial counsel Dills was ineffective due to the cumulative effect of his errors.  Judge Cox reviewed the identical claim and rejected

the same, concluding that the court was "not convinced that any of the alleged errors either individually or when taken in the aggregate, were unreasonable or changed the outcome of the trial." (ECF No. 7-11 at 24–25).  What is more, Carter cannot aggregate attorney Dills' alleged errors to form a constitutional violation.   Fisher v. Angelone, 163 F.3d 835, 852–53 (1998) (holding that a cumulative error analysis only applies to the effect of those matters actually determined to be constitutional error and not the cumulative effect of all matters alleged or deemed deficient).

After examining the post-conviction court's rulings and independently examining the record, this Court is satisfied that Carter has not demonstrated any basis for constitutional deficiencies in the state court proceedings.  The Court concludes there is insufficient prejudice necessary to establish his trial attorney's ineffectiveness under the Strickland standard.  See 28 U.S.C. § 2254(d); see also Stamper v.  Muncie, 944 F.2d 170, 178 (4th Cir. 1991).  The post-conviction court's rejection of Carter's claims was neither contrary to clearly-established federal law, nor did it involve an unreasonable application of that law.

### III.   CONCLUSION

Upon review of the Petition for Writ of Habeas Corpus and the opposition thereto, the Court concludes that Carter is not entitled to federal habeas relief.  A certificate of appealability may only issue if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Because this Court concludes that there has been no

14

substantial showing of the denial of a constitutional right, a certificate of appealability will be denied.  <u>See</u> 28 U. S.C.§ 2253(c)(2).

A separate order follows.

<u>November 29, 2016</u>
Date

                                        <u>            /s/            </u>
                                        George L. Russell, III
                                        United States District Judge